## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| **CRISTINA LIVINGSTON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **Case No.: 8:19-cv-02489** |
| | ) |
| **RESORT INNS OF AMERICA, INC.** | ) |
| **d/b/a TRADEWINDS ISLAND** | ) |
| **RESORTS ON ST. PETE BEACH,** | ) |
| | ) |
| **Defendant.** | ) |
| _____/ | |

## PLAINTIFF'S COMPLAINT WITH DEMAND FOR JURY TRIAL

Comes Now Plaintiff, CRISTINA LIVINGSTON ("Plaintiff" or "Livingston"), and files her Complaint against Defendant, RESORT INNS OF AMERICA, INC. d/b/a TRADEWINDS ISLAND RESORTS ON ST. PETE BEACH ("Defendant" or "Tradewinds"), and in support she states the following:

## NATURE OF THE CLAIMS

1.      This is an action for monetary damages, pursuant to Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII") and the Florida Civil Rights Act of 1992, Fla. Stat. §§ 760.10, *et seq*. ("FCRA") to redress Defendant's unlawful employment practices against Plaintiff, including discrimination, sexual harassment, and retaliation against Plaintiff because of her sex and in retaliation for Plaintiff's complaints of sexual harassment and intentional infliction of emotional distress and negligent retention/negligent supervision leading to her unlawful termination.

1

## JURISDICTION AND VENUE

2.      This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under Title VII.

3.      This Court has supplemental jurisdiction over Plaintiff's related claims arising under state law and the FCRA pursuant to 28 U.S.C. § 1367(a).

4.      Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein occurred in this district.

## THE PARTIES

5.      Plaintiff, Livingston is a citizen of the United States, and is and was at all times material, a resident of the State of Florida, residing in Pinellas County, Florida.

6.      Defendant, Tradewinds is a Florida for profit corporation with its principal place of business in St. Petersburg, Florida.

7.      Plaintiff worked for Defendant at 5500 Gulf Boulevard, St. Petersburg, Florida 33706.

8.      Defendant is an employer as defined by the all laws under which this action is brought and employs the requisite number of employees.

## PROCEDURAL REQUIREMENTS

9.      Plaintiff has complied with all statutory prerequisites to filing this action.

10.     On August 7, 2018, Plaintiff timely dual-filed a claim with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR"), against Defendant, satisfying the requirements of 42 U.S.C. § 2000e-5(b) and (e).

11.     Plaintiff's EEOC charge was filed within three hundred (300) days after the alleged unlawful employment practices occurred.

12.     On August 28, 2019, the EEOC issued to Plaintiff a Notice of Right to Sue.

13.     This complaint was filed within ninety (90) days of Plaintiff's receipt of the EEOC's Notice of Right to Sue.

## FACTUAL ALLEGATIONS RELATED TO MR. MCGINNIS' SORDID HISTORY OF SEXUALLY HARASSING DEFENDANT'S FEMALE EMPLOYEES AND DEFENDANT'S FAILURE TO TAKE REMEDIAL ACTION

14.     Todd McGinnis works for Defendant as its Director of Beach Services.

15.     Mr. McGinnis has a long and sordid history of sexually harassing Defendant's female employees many of which were minors.

16.     For many of Defendant's young female employees, their first experience in the work force was their employment – a fact not lost on Mr. McGinnis.

17.     For example, Mr. McGinnis sexually harassed a then sixteen (16) year old female employee.  Mr. McGinnis approached this female employee one day during her shift and asked her "what's wrong" to which she provided an innocent response expected from a typical teenager, "we have just been working our asses off and no one else is." Mr. McGinnis did not reply in a manner expected of a member of management, instead he physically circled this female employee, looked at her buttocks and remarked "nope it's still there..." referring to her buttocks.

18.     Alex Brogley, male, and his sister Christa Brogley worked for Defendant in their teenage years.  When Mr. Brogley was approximately seventeen (17) years old he was working in one of Defendant's Cabanas with Ms. Brogley. Mr. McGinnis approached both Ms. Brogley and Mr. Brogley and physically placed both hands on Mr. Brogley's head, twisting it such that it forced Mr. Brogley to watch the female beachgoers wearing bathing suits walk past while he made inappropriate comments about their bodies.

19.     Mr. McGinnis has also touched female employees on their shoulders and necks as a greeting instead of a professional handshake, pulled on the ponytails of female employees, and contacted female employees during non-working hours including calls using Facetime.

20.     Mr. McGinnis commented to male employee Jaymie Centamore that if he was going to "cheat on his wife I [Mr. McGinnis] would do it with Micha [Bubolz]." Ms. Bubolz is Mr. McGinnis' female subordinate.

21.     Defendant first became aware of Mr. McGinnis' sexually harassing behavior in approximately 2016.

22.     Travis Diamond, Defendant's former Assistant Director, notified Defendant's Human Resources Department of the numerous complaints of sexual harassment from female employees against Mr. McGinnis.

23.     Upon information and belief McKenzie Currie, former Beach Manager, and Mike Valentine, former Beach Engineer, also raised concerns to Defendant regarding Mr. McGinnis' sexual harassment of female employees.

24.     Christopher James Earp, Defendant's former Assistant Director, notified Jacqueline DuChene, Human Resources Manager, of the numerous complaints of sexual harassment from female employees against Mr. McGinnis.

25.     Among other examples, Mr. Earp notified Defendant that Mr. McGinnis purchased two-piece bathing suits and instructed Defendant's female lifeguards to wear the two-piece bathing suits as a "uniform." Not only did Mr. McGinnis purchase the two-piece bathing suits, he demanded the female lifeguards come to his private office and "try them on." Upon information and belief, this practice is well outside of Defendant's established policies and there was no reason, other than to sexually harass the female lifeguards, for Mr. McGinnis to do such a thing.

26.     Mr. McGinnis did not treat similarly situated male employees in the same manner as female employees.

27.     Defendant had years to address and correct Mr. McGinnis' behavior but it chose not to.

28.     Ironically enough Mr. McGinnis and Chris Tench, Front Desk Supervisor attended a sexual harassment training seminar. During the training Mr. McGinnis spent his time making vulgar and inappropriate comments to Mr. Tench such as "show me your tits" in an attempt to "joke."

29.     Mr. Tench notified Ms. Miller about Mr. McGinnis' comments at the sexual harassment training. Like Mr. Earp and Mr. Diamond, Ms. Miller also reported Mr. McGinnis' sexually harassing behavior to Defendant.  Ms. Miller met with Ms. DuChene of Mr. McGinnis' behavior and how she felt extremely uncomfortable working with him because of his pattern and history of sexually harassing female employees.  Ms. DuChene responded by simply stating "*it's not like he is going around **raping** anyone*" implying that unless a female employee was actually raped there was nothing for Defendant to be concerned about.

30.     Defendant was on notice multiple times regarding Mr. McGinnis' in appropriate and sexually harassing behavior and failed to take any remedial action – subjecting current and future female employees to severe and pervasive sexual harassment.

31.     Mr. McGinnis remained employed and empowered to continue sexually harassing Defendant's female employees.

**FACTUAL ALLEGATIONS RELATED TO DEFENDANT'S SEXUAL HARASSMENT
OF AND RETALIATION AGAINST PLAINTIFF
AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

32.     Plaintiff is a Caucasian female.

33.     Defendant discriminated against Plaintiff because of her sex and subjected her to severe and pervasive sexual harassment.

34.     Plaintiff and Mr. McGinnis attended a Recreation Conference in Orlando, Florida. Typically Plaintiff and Defendant's employees would travel in Defendant's vehicle to the conference, but on this occasion Mr. McGinnis drove himself and Plaintiff in his personal vehicle. During the car ride home from Orlando to St. Petersburg, Florida Mr. McGinnis sexually harassed Plaintiff.

35.     Mr. McGinnis sexually harassed Plaintiff when he began discussing another man's penis with Plaintiff while alone in the car with her.  Mr. McGinnis recounted to Plaintiff in detail a conversation he had with an employee's mother about the size of her husband's "package."

36.     In her role as Assistant Director of Beach Services, Plaintiff learned of the numerous prior instances of Mr. McGinnis' sexual harassment of female employees as well as reports that Mr. McGinnis continued to sexually harass current female employees.

6

37.    When she returned to Orlando Plaintiff reported to Human Resources that Mr. McGinnis sexually harassed her and that she was aware he had sexually harassed and continued to sexually harass other female employees.

38.    Defendant initiated an investigation. Despite the severity of the allegations against Mr. McGinnis, Defendant did not suspend him, he remained in his position of power and was permitted to continue sexually harassing Defendant's female employees.

39.    Additionally, Defendant permitted Mr. McGinnis to be in the building and near the location where Defendant met with each female employee to question her about the allegations against Mr. McGinnis thus exposing each female employee to intimidation and the added fear of reprisal.

40.    As part of Defendant's "investigation" Plaintiff met with Ms. DuChene to discuss her allegations.   After Plaintiff described the sexual harassment she endured and the sexual harassment Mr. McGinnis perpetrated against many other female employees, Ms. Ms. DuChene response in the same dismissive manner as she did to Ms. Miller – stating "*well it's not like he is going around **raping** anyone.*"

41.    Defendant's repetition of such comment is extreme and outrageous, beyond all bounds of decency, and intended to cause Plaintiff severe emotional distress.

42.    Defendant's comments and actions caused Plaintiff to suffer from severe emotional distress.

43.    Defendant concluded its investigation by issuing Mr. McGinnis a "Memo" outlining all of his sexually harassing behavior and the allegations against him – which had all been substantiated – and simply directed Mr. McGinnis to "stop" sexually harassing female employees and "to learn and grow from this incident." No further remedial action was taken.

7

44.     Defendant was derelict in its duty to protect its female employees from sexual harassment.

45.     Plaintiff engaged in protected activity when she reported the sexual harassment she received at the hands of Mr. McGinnis.

46.     Plaintiff also engaged in protected activity when she raised her concerns about Mr. McGinnis' past and current sexual harassment of multiple other female employees.

47.     In retaliation for her engagement in engagement in protected activity Mr. McGinnis notified the staff under Plaintiff's supervision that Plaintiff was not in fact their supervisor and not to heed any instruction or directive issued by Plaintiff.

48.     When Plaintiff brought this concern to Human Resources, Defendant flippantly replied "well, that's management 101." Plaintiff further expressed that she felt Mr. McGinnis' actions were in direct retaliation for her reporting the sexual harassment to which Defendant did not respond.

49.     Due to the severe and pervasive sexual harassment she endured, the retaliation she faced for reporting the same and Defendant's failure to take remedial action left Plaintiff with no choice but to tender her resignation.

50.     Plaintiff has been damaged by Defendant's illegal conduct.

### Count I: Sex Based Discrimination in Violation of Title VII

51.     Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-50 above.

52.     At all times relevant to this action, Plaintiff was in a protected category under Title VII because of Plaintiff's sex, female.

53.     Defendant is prohibited under Title VII from discriminating against Plaintiff because of Plaintiff's sex with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

54.     Defendant violated Title VII by unlawfully discriminating against Plaintiff based on Plaintiff's sex.

55.     Defendant intentionally discriminated against Plaintiff on the basis of Plaintiff's sex.

56.     As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer, lost wages, lost benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

57.     Defendant's unlawful conduct in violation of Title VII is outrageous and malicious, intended to injure Plaintiff, and has been done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of exemplary and/or punitive damages.

## Count II: Sexual Harassment in Violation of Title VII

58.     Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-50 above.

59.     Defendant subject Plaintiff to severe and pervasive sexual harassment.

60.     Despite Plaintiff's reporting the harassment, Defendant took no action to remedy the situation or prevent future harassment.

61.     Defendant's conduct created and perpetuated a hostile work environment for Plaintiff.

62.     Defendant's conduct violates Title VII.

63.     The Plaintiff has satisfied all statutory prerequisites for filing this action.

64.     Defendant's violation of Title VII has caused the Plaintiff to suffer a loss of pay, benefits, and prestige for which Plaintiff is entitled to damages.

65.     Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling Plaintiff to compensatory damages.

66.     Defendant has engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's federally protected rights, thereby entitling Plaintiff to punitive damages.

## Count III: Retaliation in Violation of Title VII

67.     Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-50 above.

68.     Plaintiff engaged in protected activity under Title VII on more than one occasion while employed by Defendant.

69.     Defendant engaged in intentional retaliation against Plaintiff for her participation in protected activity, specifically Plaintiff's repeated reports regarding the discrimination and hostile work environment Plaintiff was experiencing.

70.     Defendant's conduct violated Title VII.

71.     Plaintiff has satisfied all statutory prerequisites for filing this action.

72.     Defendant's discriminatory conduct, in violation of Title VII, has caused Plaintiff to suffer a loss of pay, benefits, and prestige for which Plaintiff is entitled to damages.

73.     Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling Plaintiff to compensatory damages.

74.     Defendant has engaged in discriminatory practices with malice and reckless indifference to Plaintiff's federally protected rights, thereby entitling Plaintiff to punitive damages.

## Count IV: Sex Based Discrimination in Violation of the FCRA

75.      Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-50 above.

76.     At all times relevant to this action, Plaintiff was in a protected category under the FCRA because of her sex, female.

77.     Defendant is prohibited under the FCRA from discriminating against Plaintiff because of her sex with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

78.     Defendant violated the FCRA by discharging and discriminating against Plaintiff based on her sex.

79.     Defendant intentionally discriminated against Plaintiff on the basis of her sex.

80.     As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the FCRA, Plaintiff has suffered and continues to suffer, lost wages, lost benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

81.      Defendant's unlawful conduct in violation of the FCRA was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling her to an award of exemplary and/or punitive damages.

## Count V: Retaliation in Violation of the FCRA

82.      Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-50 above.

83.      Plaintiff engaged in protected activity under the FCRA while when she raised her concerns to Defendant.

84.      Defendant engaged in intentional retaliation against Plaintiff for her participation in protected activity.

85.      Defendant's conduct violated the FCRA.

86.      Defendant's discriminatory conduct, in violation of the FCRA, has caused Plaintiff to suffer a loss of pay, benefits, and prestige for which she is entitled to damages.

87.      Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling her to compensatory damages.

88.      Defendant has engaged in discriminatory practices with malice and reckless indifference to Plaintiff's federally protected rights, thereby entitling her to punitive damages.

## Count VI: Intentional Infliction of Emotional Distress

89.       Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-50 above.

90.     Defendant engaged in deliberate conduct when it repeatedly failed to take remedial action following Plaintiff's complaint and its own first-hand knowledge of Mr. McGinnis' history of sexually harassing female employees, thus ratifying the discrimination and harassment.

91.     Defendant's conduct was extreme and outrageous.

92.     Defendant's extreme and outrageous conduct caused Plaintiff to suffer severe emotional distress.

### Count VII: Negligent Retention/Negligent Supervision

93.     Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-50 above.

94.     Defendant has a duty to ensure the safety of its employees and provide a work environment free from sexual harassment and retaliation.

95.     Defendant was aware or should have been aware of Mr. McGinnis' severe and pervasive sexual harassment of its female employees.

96.     Mr. McGinnis' severe and pervasive sexual harassment of Defendant's female employees indicates he is unfit to work in a supervisory role.

97.     Defendant breached its duty when it failed to take remedial action after learning of Mr. McGinnis' repeated conduct, leaving its female employees exposed to Mr. McGinnis and the possibility of continued sexual harassment or retaliation.

98.     Defendant's breach caused Plaintiff damages.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, requests this Honorable Court:

a)      Enter judgment requiring Defendant to pay back wages and back benefits found to be due and owing at the time of trial, front-pay, compensatory damages, including emotional distress damages, in an amount to be proved at trial, punitive damages, and prejudgment interest thereon;

b)      Granting Plaintiff costs and an award of reasonable attorneys' fees (including expert fees); and

c)      Award any other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all triable issues herein.

Respectfully Submitted:

**/s/ Gabrielle E Klepper**
Gabrielle E. Klepper
Florida Bar No. 92815
**Spielberger Law Group**
4890 W. Kennedy Blvd.
Suite 950
Tampa, Florida 33609
T: (800) 965-1570
F: (866) 580-7499
Gabrielle.Klepper@spielbergerlawgroup.com

*Counsel for Plaintiff*